**TICOR TITLE INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Alvin FLORIDA, Jr.; Homer H. Shepard, Defendants–Appellants,**

**and**

**Jeffrey Anthony; Deborah V. Blue, Defendants.**

**No. 90–15068.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 12, 1991.

Decided June 25, 1991.

Craig R. Lewis, Law Offices of Curtis G. Oler, San Francisco, Cal., for defendants-appellants.

Arnold S. Rosenberg, Bancroft, Avery & McAlister, San Francisco, Cal., for plaintiff-appellee.

Before WALLACE, Chief Judge, GOODWIN and FLETCHER, Circuit Judges.

WALLACE, Chief Judge:

Ticor Title Insurance Company (Ticor) brought suit for damages resulting from its reliance on a fraudulent federal tax lien release that had been forged by Shepard and Florida. The district court, following a bench trial, entered a judgment in favor of Ticor after concluding that Shepard and Florida had violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, and had engaged in fraud. The district court had jurisdiction pursuant to 18 U.S.C. § 1964(c). We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.

## I

Shepard and Florida were partners in Realty Information Systems (Realty), a business which invested in real estate, particularly distressed properties in foreclosure. In August 1987, they purchased a San Francisco condominium. The condominium was encumbered by a federal tax lien, recorded in 1986, in the amount of $39,487.52. Shepard and Florida subsequently offered the condominium for resale.

Landis contacted Shepard and Florida as an interested purchaser in September 1987, but advised them that title to the property would have to be delivered free of any liens. The parties agreed on a purchase price, but a title search performed by Ticor revealed that title to the property was clouded by the tax lien, which gave the Internal Revenue Service (IRS) a right of redemption on the condominium. Shepard and Florida tried to persuade the IRS to release its right of redemption so that the sale could be consummated, but they met with no success. Fearing that Landis might retract his offer to purchase, a Realty employee notified him on November 15, 1987, that Shepard and Florida were close to obtaining a release. The next day, a forged certificate of release, purporting to release the IRS lien for unpaid taxes, was recorded in the office of the San Francisco County Recorder. In reliance upon this fraudulent release, Ticor agreed to insure Landis's title to the property without an exception for the IRS's right of redemption, and Landis purchased the condominium.

Five days after escrow had closed, the IRS discovered that a fraudulent release had been recorded and notified Landis. After learning from the IRS that it intended to redeem his newly purchased condominium, Landis contacted Shepard and Florida. They told him not to worry because he had a title insurance policy, and they made no attempt to clear the title on the property. Landis then made a title insurance claim against Ticor. Ticor paid him $190,041 under the policy, and in return received title to the condominium. Two days later, however, the IRS exercised its right of redemption and took the property from Ticor for $75,000, the amount paid by Florida and Shepard, at the trustee sale held for the benefit of the first lienholder. *See* 28 U.S.C. § 2410(d).

Ticor sued Shepard and Florida, alleging fraud, RICO violations, and other claims. It based its RICO claim on the Landis sale forgery and two prior tax lien release forgeries. The district court found that Florida, assisted by Shepard, had perpetrated the three forgeries, and entered a judgment in favor of Ticor on the fraud and RICO claims.

## II

■ Shepard and Florida first argue that the district court erred in finding that Florida forged the three certificates of release and that Shepard assisted him in doing so. We review the district court's forgery findings for clear error. *Kruso v. International Telephone & Telegraph Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989) (*Kruso*), cert. denied, — U.S. —, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990).

■ Shepard and Florida were the only individuals who had an interest in all of the properties involved in the three forgeries. A handwriting expert testified that the three certificates were forged by the same person, and that Florida deliberately disguised his handwriting when providing a sample prior to trial. Evidence also showed that Florida knew the recorder's instrument number of the San Francisco condominium release within minutes after it was recorded. This information could have been known only by the person who recorded the release, because recorded documents are not available for public review until the day after recordation. On the basis of this and other evidence, we conclude that the district court did not clearly err in finding that Florida forged the three certificates.

■ With regard to whether Shepard assisted in the forgery scheme, an IRS officer testified that when he told Shepard and Florida that the IRS would require a large

payment to release its right of redemption on the San Francisco condominium, Shepard told him that they "weren't going to do it that way" and asked him to leave the room so Shepard and Florida could "reach an agreement" on how to proceed. The forged release was recorded a few days later. Ticor introduced evidence showing that one of the forged certificates that was prepared allowed Shepard to qualify for a bank loan on his property. Shepard destroyed this forged certificate after it was mailed to him. In addition, the IRS employee whose signature was forged on the certificates was known by Shepard and had previously investigated whether to redeem property owned by Shepard. In that capacity, she had mailed a notice bearing her signature to an attorney representing Shepard. We hold that the district court did not clearly err in finding that Shepard assisted in the forgeries.

■ Shepard and Florida argue that we should overturn the forgery findings because no direct evidence supported them. Indeed, the only direct evidence concerning their alleged involvement in the fraud was Shepard and Florida's own testimony, which supported a ruling in their favor. However, the district judge was entitled to disbelieve this testimony based on his assessment of Shepard and Florida's credibility. See Fed.R.Civ.P. 52(a) (requiring that deference be paid to the trial court's credibility determinations). That no direct evidence supported the district court's ruling is not determinative; circumstantial evidence can stand alone in proof of any fact. See United States v. Brady, 579 F.2d 1121, 1127 (9th Cir.1978), cert. denied, 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41 (1979).

### III

■ Shepard and Florida next contend that we should reverse the judgment against them on the RICO claim, because Ticor has failed to show that they engaged in a pattern of racketeering activity as required by the RICO statute. See 18 U.S.C. § 1962. The district court's interpretation of the RICO pattern requirement

is a ruling of law which we review de novo. Kruso, 872 F.2d at 1421.

In H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the Supreme Court discussed the term "pattern of racketeering activity," and held that it requires a plaintiff to "show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." Id. at 239, 109 S.Ct. at 2900 (emphasis in original). The relationship requirement is satisfied by a showing that the racketeering predicates "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. at 240, 109 S.Ct. at 2901 (quotation omitted). To satisfy the continuity prong of the test, one need only show that the predicates pose a threat of continued criminal activity, such as when the illegal conduct is "a regular way of conducting [a] defendant's ongoing legitimate business." Id. at 243, 109 S.Ct. at 2902.

■ The RICO judgment against Shepard and Florida was based on the three episodes of forgery. These forgeries were related under the Supreme Court test, because they had both similar purposes and identical methods of commission. See id. at 240, 109 S.Ct. at 2901. The forgeries also posed a threat of continued criminal activity. Shepard and Florida forged the three releases within a 13-month period. The frequency of the forgeries suggests that this practice had become a regular way of conducting business at Realty, satisfying the continuity prong of the pattern test. See id. at 243, 109 S.Ct. at 2902; Ikuno v. Yip, 912 F.2d 306, 309 (9th Cir. 1990) (holding that the filing of two false annual reports posed a threat of continued criminal activity). Shepard and Florida argue that there could not have been a threat of continued criminal activity, because they obtained two legitimate lien releases on other properties subsequent to the last forged release. However, that Shepard and Florida obtained two legitimate releases does not demonstrate that they would

not continue to forge releases if legitimate attempts to obtain releases were unsuccessful. Thus, we conclude that the district court was correct in holding that the three forgeries demonstrated a pattern of racketeering activity under RICO.

## IV

■ Shepard and Florida next contend that the district court erred in calculating the $461,766 RICO damages awarded to Ticor. The district court's computation of damages is a finding of fact, which we review under the clearly erroneous standard. *Galindo v. Stoody Co.*, 793 F.2d 1502, 1516 (9th Cir.1986).

■ After Landis filed his insurance claim, Ticor paid him $190,041, which represented Landis's purchase price plus incidental expenses. In return, Ticor received the property. Ticor also spent $38,881 in attorneys' fees to litigate an unsuccessful action against the IRS to quiet title on the property. When the IRS redeemed the property, it paid Ticor $75,000. This resulted in a net loss to Ticor of $153,922. The district judge trebled this figure as allowed by RICO, and arrived at the total damage figure.

■ The measure of civil damages under RICO is the harm caused by the predicate acts constituting the illegal pattern. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). These damages must be "established by competent proof, not based upon mere speculation and surmise." *Fleischhauer v. Feltner*, 879 F.2d 1290, 1299 (6th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 1122, 107 L.Ed.2d 1029, — U.S. ——, 110 S.Ct. 1473, 108 L.Ed.2d 611 (1990). Shepard and Florida argue that Ticor failed to prove that the alleged damages were reasonable, and therefore urge that we vacate the damage award.

The damages calculation was based on two elements: (1) Ticor's reimbursement of Landis for the purchase price and other incidental expenses associated with the sale, plus (2) Ticor's legal fees incurred in trying to stop the IRS from redeeming the property. The damage award is therefore based on actual cash payments to third parties, which appear reasonable on their face. Shepard and Florida presented no evidence that the payments made by Ticor were inflated or unreasonable. We therefore conclude that the district court did not clearly err in calculating the damage award.

## V

Shepard and Florida next argue that the district court erred in holding that they defrauded Ticor, because the "forgeries [only] affected liabilities as between the IRS and the respective taxpayers." Even if this argument had merit, Shepard and Florida would not be entitled to relief. We have already affirmed the RICO award, and the district court made no additional award based on the state fraud claim.

## VI

Shepard and Florida next contend that sanctions imposed by the district court were improper. Prior to trial, in response to discovery abuses on the part of Shepard and Florida, the district court ordered that they pay the attorneys' fees and costs Ticor incurred in their motion to compel discovery.

We need not reach this issue, however, because any mistake is harmless in light of the district court's ruling that Ticor is entitled to attorneys' fees and costs for the entire RICO litigation. Thus, Ticor has already been awarded all fees incurred in this litigation. The district court should be sure that the sanctions based on attorneys' fees are not added to the RICO attorneys' fees awarded to Ticor.

## VII

■ Shepard and Florida finally argue that the district court improperly denied them a jury trial, despite the fact that they waived their right to a jury seven months before trial. They also contend that they were prejudiced by the district court's failure to grant a continuance prior to trial. We review the district court's

decisions for abuse of discretion. *See Mardesich v. Marciel*, 538 F.2d 848, 849 (9th Cir.1976) (denial of relief from waiver of jury trial); *United States v. 2.61 Acres of Land, More or Less*, 791 F.2d 666, 670 (9th Cir.1985) (continuance). Shepard and Florida's arguments on these points are wholly without merit, and we conclude that there was no abuse of discretion.

AFFIRMED.